UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL ANTHONY SPRINGER, | ) | CIVIL NO. 4:19-CV-1080-WIA |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| ANDREW SAUL[1], | ) | |
| Defendant | | |

MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiff Michael Anthony Springer, ("Plaintiff") an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income under Title XVI of the Social Security Act.  Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §1383(c)(3)(incorporating  42 U.S.C. § 405(g) by reference).

After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* Section 205(g) of the Social Security Act, 42 U.S.C. §405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).  The caption in this case is amended to reflect this change.

final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision is AFFIRMED.

## II.   BACKGROUND & PROCEDURAL HISTORY

On March 31, 2012, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 140-148).  In this application, Plaintiff alleged he became disabled as of April 8, 2011, when he was 36 years old, due to back problems. (Admin. Tr. 161). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. (Admin. Tr. 175). Plaintiff has at least a high school education and is able to communicate in English. (Admin. Tr. 468). Plaintiff has no past relevant work.[2] (Admin. Tr. 467).

---

[2] At the remand hearing (second hearing), the ALJ noted:

> The Work History Report (4E) indicates that the claimant worked as a cook at a college from 2003 to 2004, 4 hours per day, 5 days a week. He answered, "Don't know" in response to the question asking what was his rate of pay. The Disability Report – Adult (1E/p. 3), indicates that the claimant worked as a cook at a college from 2003 to 2004, 5 hours per day, 5 days a week, and his rate of pay was $5.75 per hour. The DEQY query (8D) shows posted earnings of $3,144.41 in 2003 from "Metz Culinary Management Inc." and $4, 469.50 in 2003 from "Sodexo Management Inc." There are additional posted earnings of $3, 216.50 in 2004 from "Sodexo Management Inc." At the first hearing, the claimant confirmed that "Metz" and "Sodexo" were "all the same place." The vocational expert (VE) at the first hearing testified that this work falls under the classification of "cook, school cafeteria," which is medium duty skilled work (SVP 6). The VE stated that jobs with an

On June 27, 2012, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 106-109). On July 24, 2012, Plaintiff requested an administrative hearing. (Admin. Tr. 110).

On October 22, 2013, Plaintiff, assisted by his counsel, appeared and testified during a hearing before Administrative Law Judge Michelle Wolf (the "ALJ"). (Admin. Tr. 643). On November 26, 2013, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 19). On December 18, 2013, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 7).

On March 12, 2015, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1-3).

---

SVP 6 require "over 1 year up to and including 2 years" to be performed long enough for the claimant to achieve average performance.

At the first hearing, the claimant was unable to give the specific timeframe in 2003 and 2004 that he worked as a cook. With the aforementioned earnings, it might not have been at least a year, in which case the "duration" prong of the requirements for past relevant work would not be satisfied. I asked the claimant again at the remand hearing if he has any further recollection and he said no. Based on these facts, I am finding that the claimant has no past relevant work. I noted that even if the cook job were past relevant work, based on the VE's testimony that it is medium duty work, the claimant would nevertheless be unable to do that job, given the RFC limitation to light exertion; and the analysis would proceed to the next step anyway.

(Admin. Tr. 467).

On May 15, 2015, Plaintiff appealed to federal court. *Springer v. Colvin*, 3:15-CV-935 (M.D. Pa.). On September 22, 2016, United States Magistrate Judge Joseph F. Saporito, Jr. issued a Report recommending that the ALJ's November 2013 decision be vacated and remanded to the Commissioner with instructions to conduct a new administrative hearing. *Springer v. Colvin*, 3:15-CV-935 (M.D. Pa.) (ECF Doc. 14). On October 31, 2016 United States District Judge Robert D. Mariani adopted Judge Saporito's Report. *Springer v. Colvin*, 3:15-CV-935 (M.D. Pa.) (ECF Doc. 17). The case was remanded with instructions to the ALJ to conduct a second hearing. *Id.*

On August 10, 2017, Plaintiff appeared and testified with the assistance of counsel at a second administrative hearing before the ALJ. (Admin. Tr. 500). On October 20, 2017, the ALJ issued a written decision denying Plaintiff's application for supplemental security income. (Admin. Tr. 456-69).

Plaintiff requested review of the ALJ's decision by the Appeals Council. Along with his request, Plaintiff submitted new evidence that was not available to the ALJ when the ALJ's decision was issued. (Admin. Tr. 427-52). Plaintiff submitted more treatment records from Dr. Joseph, dated from October 2013 to June 2015. *Id.*

On April 26, 2019, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 418-423).

On June 25, 2019, Plaintiff initiated this civil action seeking judicial review of the ALJ's October 2017 decision. (Doc. 1). Plaintiff argues that the findings are not supported by substantial evidence and are contrary to the applicable laws and regulations. (Doc. 1, ¶¶ 5-6). As relief, Plaintiff requests that this Court reverse the decision of the ALJ and enter an order awarding benefits. *Id.* at p. 6.

On August 29, 2019, the Commissioner filed his Answer (Doc. 4). Therein, the Commissioner maintains that the ALJ's October 2017 decision denying Plaintiff's application is correct, was made in accordance with the law and regulations, and is supported by substantial evidence. (Doc. 4). Along with his Answer, the Commissioner filed a certified copy of the administrative transcript. (Doc. 5).

This matter has been briefed by the parties and is ripe for decision. (Doc. 8, Doc. 9).

## III.   STANDARDS OF REVIEW

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v.*

*Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The Supreme Court has recently underscored for us the limited scope of the Court's review of the Commissioner's final decision denying a claimant's application for benefits, stating:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-*Mobile South, LLC v. Roswell*, 74 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; *see, e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

There are several fundamental legal propositions which flow from this deferential standard of review. First, when conducting our review, "we are mindful that we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, the Court must refrain from trying to re-weigh the evidence of record. Rather, our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

The Third Circuit has noted:

In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

"When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reasons or the wrong reason.' *Mason v. Shalala*,

Page 8 of 34

994 F.2d 1058, 1066 (3d Cir. 1993)." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Accordingly, the Court should remand for further consideration whenever the record reveals that evidence was discounted by the ALJ for the wrong reason or no reason.

Thus, the Court's task is twofold. The Court must evaluate the substance of the ALJ's decision under a deferential standard of review but also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions was sufficiently articulated to permit meaningful judicial review.

B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).[3] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous

---

[3] Throughout this Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on October 20, 2017.

work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §

1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 416.912(f); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   DISCUSSION

A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In her October 2017 decision denying Plaintiff's application, the ALJ evaluated Plaintiff's claim at each step of the sequential evaluation process. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between March 31, 2012 (Plaintiff's application date) and October 20, 2017 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 459). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: cervical strain/sprain; lumbosacral strain/sprain; and radiculopathy. (Admin. Tr. 459). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 461).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 416.967(b) subject to the following additional limitations:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 416.967(b) except: He can occasionally balance, stoop, crouch, crawl, kneel, and climb, but never on ladders, ropes, or scaffolds.

Page 12 of 34

(Admin. Tr. 461).

At step four, the ALJ found that Plaintiff did not have past relevant work. (Admin. Tr. 467). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 468). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: Information Clerk (DOT No. 237.367-018; Interviewer (DOT No. 205.367-054); and Photocopy Machine Clerk (DOT No. 207.685-014). (Admin. Tr. 468).

B.  WHETHER THE ALJ ERRED IN ITS OCTOBER 2017 DECISION DENYING PLAINTIFF SOCIAL SECURITY BENEFITS

Plaintiff identifies one issue: whether Plaintiff is disabled.[4] However, a review of Plaintiff's Brief (Doc. 8), reveals three main issues: (1) Whether substantial

---

[4] Plaintiff's brief is, at times, unclear. Specifically, Plaintiff's argument section is titled, "ALJ Admissions and Legal Positions" and is followed by a series of untitled and unrelated arguments. At no point does Plaintiff specifically address the issues argued on appeal. The Local Rules provide:

(b) **Statement of errors**
This statement shall set forth in separate numbered paragraphs the specific errors committed at the administrative level which entitled plaintiff to relief. The court will consider only those errors specifically identified in the briefs. A general argument that the findings of the administrative law judge are not supported by substantial evidence is not sufficient.
(c) **Argument**

evidence supports the ALJ's finding that Plaintiff's anxiety was not a "severe" impairment; (2) Whether substantial evidence supports the ALJ's treatment of Dr. Joseph's opinion; and "(3) whether the ALJ was biased.

In this Opinion, I will also address Plaintiff's argument that the ALJ failed to address Dr. Joseph's objections regarding the vocational expert's testimony.

### 1. Whether Substantial Evidence Supports the ALJ's Finding That Plaintiff's Anxiety Was Not a "Severe" Impairment

First, Plaintiff argues that the ALJ did not properly consider the paragraph B criteria. Plaintiff argues:

> [T]here is concern about the ALJ's reliance upon Dr. Taren, who evaluated Springer in 2013. Notably, the ALJ states that she gave "Dr. Taren's opinion great weight" relative to mental health treatment and social anxiety. (See Exhibit "C", p. 6). Notwithstanding the fact that Dr. Taren used the "paragraph B" criteria in effect *prior to* January 17, 2017, when the regulations under paragraph "b" changed, in the ALJ's own 2013 decision, she admitted that, even then, Springer "does treat for transient anxiety. . .", a finding that was omitted in the 2017 decision. (See unfavorable decision of November 26, 2013 attached as **EXHIBIT "E"**, and referring to Exhibit "E", p. 4). The ALJ then made her own determination, without any other expert, that Springer does not meet the new "paragraph B" criteria, as Dr. Taren's report would no longer apply. Dr. Raymond Joseph, though, Springer's current primary physician testified clearly that he has continuously treated Springer, and

---

The argument shall be divided into sections separately addressing each issue and shall set forther the contentions of plaintiff with respect to each issue therefor. Each contention must be supported by specific reference to the portion of the record relied upon and by citations to statutes, regulations and cases supporting plaintiff's position.
L.R. 83.40.4

clearly recognized Springer's clear anxiety, for which he has prescribed Xanax. Dr. Joseph's determination and medical testimony was not even considered by the ALJ in her decision in this regard. Essentially, Dr. Joseph's medical testimony regarding Springer's anxiety as a severe mental impairment is and remains <u>uncontradicted</u> in this case. For that reason, the ALJ lacked the relevant medical authority to determine that Springer's mental issues are not present and/or not severe.

(Doc. 8, pp. 6-7) (emphasis in original).

In response, Defendant argues:

As the ALJ explained, at step two of the sequential evaluation process, Plaintiff needs to prove that his "medically determinable impairments[s]" were so severe that they "significantly limit[ed] [is] physical or mental ability to do basic work activities" (Tr. 457-59) (citing 20 C.F.R. §§ 416.920, 416.922)). Relevant to anxiety, the ALJ needed to consider "the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders . . . known as the 'paragraph B' criteria," which include, understand, remember, or apply information; interact with others; concentration, persist or maintain pace; and adapt or manage oneself (Tr. 459) (citing 20 C.F.R. pt. 404, subpt. P., app. 1). For the ALJ to find that Plaintiff's anxiety was "severe," the evidence needed to show that it caused more than a "mild" limitation in at least one category (Tr. 460) (citing 20 C.FR. § 416.920a(d)(1)).

As the ALJ thoroughly laid out, no evidence supported finding anything more than a mild limitation (Tr. 459-60). Most significantly, Plaintiff admitted that he was not limited in terms of understanding or memory, social interaction, concentration or completing tasks, or caring for himself (Tr. 459-60 (citing Tr. 175-76)). These admissions, standing alone, are substantial evidence. But the ALJ also cited other evidence, including staff observations, and Dr. Taren's opinion (Tr. 459-61).

Nevertheless, Plaintiff now claims error because Dr. Taren's opinion related to a prior version of the relevant "paragraph B" criteria, which according to Plaintiff, means that Dr. Taren's opinion "would no longer apply" (Pl.'s Br. 6). This assertion lacks support. Plaintiff offers no

authority that suggests that the regulatory revision for the "paragraph B" criteria rendered opinions based on the prior criteria irrelevant. By their plain terms, the new criteria significantly overlap the old (i.e., "social functioning" compared to "interacting with others"), and Dr. Taren's opinion still bore on the extent to which Plaintiff's anxiety affected his functioning (Tr. 100). Thus, the ALJ reasonably found that opinion was probative, notwithstanding the regulatory revision (Tr. 461).

Beyond this unsupported argument, Plaintiff cites to Dr. Joseph's testimony (Pl.'s Br. 6), but Dr. Joseph's testimony does not undermine the ALJ's finding. Dr. Joseph only testified that side effects from Xanax could affect one's ability to perform work activity (Tr. 520), and Plaintiff specifically did not experience any side effects from Xanax (Tr. 177, 190). Dr. Joseph's testimony, if anything, only supports the ALJ's finding.

For these reasons, the Court should affirm the ALJ's finding that Plaintiff did not prove his anxiety was a severe impairment.

(Doc. 9, pp. 10-12).

At step two of the sequential evaluation process, the ALJ considers whether a claimant's impairment is (1) medically determinable or non-medically determinable, and (2) severe or non-severe; this step is essentially a threshold test. 20 C.F.R. § 416.920(a)(4)(ii); SSR 85-28, 1985 WL 56856.

An impairment, or combination of impairments, is not severe if it does not significantly limit a claimant's ability to do basic work activities. 20 C.F.R. § 416.921. Conversely, an impairment is "severe" if it *does* significantly limit a claimant's physical or mental ability to do basic work activities. The phrase, "significantly limits," however is not synonymous with "disability." Rather, the

ALJ's analysis at step two is a threshold test designed to screen out *de minimis* claims.

Under the Commissioner's regulations, *all* impairments, both severe and non-severe, must be accounted for in an ALJ's RFC assessment. 20 C.F.R.§ 416.945. Therefore, in cases where the ALJ found at least one impairment is medically determinable and severe, an ALJ's unsupported conclusion that one or more other impairments are medically determinable but "non-severe" may be viewed as harmless error unless it appears that the ALJ's error influenced his or her RFC assessment. As explained in *McClease v. Comm'r of Soc. Sec.*,

> [E]ven if an ALJ erroneously determines at step two that one impairment is not "severe," the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five. However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration. *See Nosse v. Astrue*, No. 08-[CV-1173, 2009 WL 2986612, *10] (W.D. Pa. Sept. 17, 2009).

*McClease v. Comm'r of Soc. Sec.,* No. 8-CV-1673, 2009 WL 3497775, *10 (E.D. Pa. Oct. 28, 2009); *see also Salles v. Comm. Of Soc. Sec.*, 229 F.App'x. 140, 145, n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless.").

The ALJ found in favor of Plaintiff at step two. (Admin. Tr. 459). Plaintiff has not shown that the ALJ's determination at step two influenced her RFC analysis. Further, Plaintiff has not identified what additional limitations should be incorporated in the RFC determination or cite to any evidence in the record that supports the existence of any additional limitation resulting from his non-severe impairments. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009). That burden has not been met here. Any error committed by the ALJ when determining whether Plaintiff's anxiety is a severe impairment would be harmless. Thus, the ALJ's conclusion regarding Plaintiff's anxiety at step two does not warrant reversal of the ALJ's decision.

   2. *Whether Substantial Evidence Supports the ALJ's Treatment of Dr. Joseph's Opinion*

Second, Plaintiff argues that the ALJ erred in its handling of Dr. Joseph's opinion and medical records. In sum, Plaintiff argues that the ALJ erred by assigning Dr. Joseph's opinion "little weight" with reference to the ALJ's step three analysis and RFC determination. Plaintiff argues:

> Dr. Joseph confirmed that he sees Springer monthly for severe pain in his lower back radiating into his lower extremities, together with pain in his neck. (NT p. 16). He treats it with narcotic pain medication, as other types of treatment have been tried in the past, but have not improved the pain. (NT p. 17). Dr. Joseph confirmed that Springer's back pain "causes an inability to work." (NT p. 17). Specifically,

Springer's pain intensity, combined with the fact that he "has pain with walking, bending, lifting and so on . . . " requires "time to be able to get off of his feet and even lie down." (NT p. 18). It seems that the ALJ made no findings based on Dr. Joseph's testimony in this regard, and, further, did not account for her reasons for rejecting it. The District Court in its initial determination found fault with the ALJ's determination confirming that the ALJ "must give some indication of the evidence she rejects and her reason(s) for discounting such evidence." (See Exhibit A, p. 24). In this context, and in this determination (See Exhibit "C", generally), she does not indicate any of Dr. Joseph's objective determinations as to Springer's physical limitations, and does not provide a reason for discounting such evidence.

[T]he ALJ has not properly reviewed Dr. Joseph's medical records. The ALJ was provided with the records that were for Springer's treatment through the date of the hearing. The ALJ's findings, however, was that the "treatment was conservative" given the severity of his complaints. (See Exhibit "C", p. 11). There was absolutely no expert testimony as to the alleged conservative nature of Springer's treatment, yet the ALJ made that unilateral, unsupported determination. In fact, the ALJ, once again, attempts to justify her continued unfavorable decision by stating "the comment I made last time remains the same. . ." relating to Springer's "conservative" treatment. Calling Dr. Joseph's medical record keeping "cut-and-paste physical exam findings" but stating that he has "essentially been the claimant's only form of treatment since the alleged onset date" (see Exhibit "C", p. 12) becomes particularly concerning because it seems to be a way for the ALJ to avoid reliance upon Dr. Joseph's uncontradicted medical testimony. Dr. Joseph was able to confirm his medical findings, both relating to the physical issues and mental anxiety concerns. Dr. Kendrick did not have the full picture, and Dr. Taren was not even consulted again prior to the 2017 hearing. As a result, the only evidence the ALJ even could rely upon is that of Dr. Joseph. Unfortunately, the decision remained unfavorable.

(Doc. 8, pp. 8, 10-11).

In response, Defendant argues that substantial evidence supports the ALJ's treatment of Dr. Joseph's opinion. Defendant argues:

> Tellingly, despite challenging the ALJ's finding, Plaintiff makes no attempt to explain how the ALJ erred when concluding that Dr. Joseph's testimony did not advocate for a finding of listing level severity. Indeed, Plaintiff does not make any attempt to connect Dr. Joseph's testimony to any of the specific requirements in any listing section. Instead, Plaintiff suggests that there is somehow a distinction between pain "management" and pain "reduction," notes that Dr. Kendrick did not address anxiety, and recounts that Dr. Joseph's testimony that lower back pain caused Plaintiff to be unable to work because he had pain when engaging, walking, bending, and lifting (Pl.'s Br. 7-8). Consistent with the ALJ's finding, this testimony does not support "a finding of listing level severity" and it does not undermine Dr. Kendrick's opinion on this issue (Tr. 461).
>
> But perhaps more significantly, the ALJ considered and reasonably discounted Dr. Joseph's testimony about Plaintiff's alleged inability to work or engage in work activity due to back pain, when making the RFC assessment (Tr. 466-67). As the Third Circuit instructs, this later finding must be read in conjunction with the ALJ's earlier finding at step three as there is no need for an ALJ to adhere to a particular format or repeatedly address evidence at every step of her analysis. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). There is no error in the ALJ fully addressing the weight given to Dr. Joseph's testimony only once.

(Doc. 9, pp. 16-17).

Defendant then highlighted the ALJ's finding that Dr. Joseph was the treating source. Defendant summarized the ALJ's decision to assign little weight to Dr. Joseph's opinion:

> Within this context, the ALJ cited several reasons why she gave little weight to Dr. Joseph[']s opinion (Tr. 466-67).

Page 20 of 34

First, the ALJ cited evidence bearing on the factor of specialty. The regulation instructs that a specialist may deserve greater weight than other sources. *See* 20 C.F.R. § 404.1527(c)(5). The ALJ noted that unlike Dr. Kendrick, an orthopedic surgeon, Dr. Joseph was not a specialist relative to Plaintiff's alleged back problems (Tr. 465).

Second, the ALJ cited evidence bearing on the factor of supportability. The regulation instructs that an ALJ should consider the extent to which a source offers support for his opinion. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical sighs and laboratory findings, the more weight we will give that medical opinion.")

Relevant to this factor, the ALJ noted that Dr. Joseph testified that his opinion was based on Plaintiff's statements of pain, but Dr. Joseph did not document the extent of Plaintiff's pain during treatment, and admitted to not doing full examinations (Tr. 466; see Tr. 517 (Dr. Joseph's claim that the "intensity of [Plaintiff's] pain made him unable to work), 524-26 (Dr. Joseph admitting that he did not do full examination or record specific findings). Further, before the ALJ, the record contained large gaps in Dr. Joseph's treatment records, despite testimony from Plaintiff and Dr. Joseph of consistent monthly treatment (Tr. 456-57, 465).

The ALJ explained that Dr. Joseph's treatment records were not compelling support for his opinion, given that they appeared to be "cut-and-paste-type physical findings, or incomplete findings, or missing records" (Tr. 466-67). This was a reasonable inference. Dr. Joseph's records—as submitted to the ALJ—contained many verbatim notations repeated at each visit (suggesting they were copied from earlier records); filed to document the reported level of pain; failed to offer specific clinical findings for range of motion, strength, or sensation deficits; and had no notes from visits between 2013 and 2015 (Tr. 394-14; 695-710). Thus, under the standard of review, the Court should [not] disturb the ALJ's finding.

Third, the ALJ cited evidence bearing on the extent to which Dr. Joseph's testimony was consistent with record as a whole. See 20 C.F.R. § 404.1527(c)(3). Specifically, the ALJ found inconsistencies,

and highlighted examples. For example, Dr. Joseph testified that no additional treatment could help Plaintiff's pain, but records from 2010 showed that other providers had actually recommended other treatment modalities (See Tr. 465 (citing to this evidence) and 466-67).

Similarly, the ALJ noted that when Plaintiff saw other providers in 2011, the year he allegedly became disabled, he presented with "essentially normal" physical examination findings related to his neck and back (Tr. 467). In fact, in January 2011, Plaintiff *denied* back pain (Tr. 222). He had no positive findings with respect to his neck or back. His neck was "supple, tender, normal ROM" (Tr. 226). His back was symmetrical with no deformity, and he exhibited normal strength in both his arms and legs (Tr. 226). In August 2011, Plaintiff reported his history of spinal pain, but only mentioned his lower back, and that he was "maintained" through his use of MS Contin as treatment (Tr. 206). But a physical examination revealed no abnormality in Plaintiff's neck or back (Tr. 217-18). Plaintiff's neck was "non-tender" and he exhibited "normal ROM" (Tr. 218). For Plaintiff's back, it was symmetrical with no deformity and no "midline . . . [or] CVA tenderness" (Tr. 218).

These examples, by themselves, are more than a scintilla of support for the ALJ's finding, thus warranting affirmance.

(Doc. 9, pp. 17-20) (footnote omitted)

With respect to Plaintiff's argument that the ALJ committed error in its treatment of Dr. Joseph's medical opinion, I am not persuaded. A claimant's treating relationship is a factor that the ALJ is required to consider when weighing medical opinions. The regulation provides the following guidance as to the consideration of this factor:

Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical

impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R.§ 404.1527(c)(2).

This regulation explains that four conditions must be present for a medical opinion to be entitled to controlling weight under 20 C.F.R. § 404.1527(c)(2):

(1) the opinion must be a medical opinion as defined in 20 C.F.R. § 404.1527(a)(1);

(2) the medical opinion must be from a treating source as defined in 20 C.F.R. § 404.1527(a)(2);

(3) the medical opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 404.1527(c)(2); and

(4) the medical opinion must be "not inconsistent with the other substantial evidence in [the claimant's] case record," 20 C.F.R. § 404.1527(c)(2).

The ALJ determined that Dr. Joseph's medical opinion was inconsistent with the substantial evidence of record. Regarding Dr. Joseph, the ALJ stated:

Primary care provider office visit notes from Dr. Joseph covering the period from approximately 2007 to August 2011 reflect consistently similar examination findings, as discussed herein (3F). From April 2011 (alleged onset date) to August 2011, the claimant was seen for back and neck complaints, and Dr. Joseph noted limited range of

motion of the neck with spasm and tenderness of the neck and upper back, limited range of motion of the lower back with spasm and tenderness, "altered" strength and sensation of the right upper and lower extremities (but no specific amount of decrease was designated), and tenderness of the right shoulder with limited range of motion.

The claimant saw Dr. Joseph on August 23, 2011 (3F/p. 3), the day after his "ileus from narcotic use" hospital discharge, but Dr. Joseph made no mention of the hospital admission in his typewritten record (he might have noted it in his handwritten record, but it is marginally legible and difficult to read (3F/p. 62)). Dr. Joseph gave the claimant "a prescription for MS Contin," and he instructed him to "continue with his current medications." This appears to contradict the hospital attending doctor's advice to "avoid narcotics," and Dr. Joseph's noted back exam findings are not consistent with the ER back exam findings (no tenderness, etc.) noted during the August 2011 stay.

Similarly, Dr. Joseph's exam findings (same as above, with limited range of motion, altered strength and sensation, etc.) on January 6, 2011 (3F/p. 11) are inconsistent with the ER exam findings just a few days earlier on January 2, 2011 (2F/p. 26, neck is nontender with normal range of motion, back is symmetrical on inspection with no deformity, upper extremities are normal with good strength in both arms, lower extremities are normal with good strength in both legs, neurologtical exam is normal/grossly intact, there is no weakness of the arms or legs, etc.).

. . . .

Follow up office visit notes from primary physician Dr. Joseph, covering the period from September 2011 to May 2012, reflect exam findings similar to those noted by him previously, and the claimant was treated with pain medications and Xanax. No imaging is included in these records (4F).

Additional follow up office visit notes from Dr. Joseph into September 2013 reflect similar exam findings to those previously noted, and there was no change in the claimant's treatment, he continued to just take medications (6F).

Page 24 of 34

. . . .

The claimant's primary care physician, Dr. Joseph, also testified at the hearing. He opined a capacity for less than sedentary work, with a reduction in standing/walking and sitting, with the need to lie down during the day. He is basing this opinion on the claimant's statements of pain but he also testified that the claimant's pain is "mild to moderate." His records do no (sic) mention the range of pain the claimant has (i.e., on a scale from 0-10), and at times he does not do a full exam. He said he feels the claimant is stable but he cannot work. He said he feels nothing can help the claimant so he has not done any new imaging, nor has he sent him again for pain management, physical therapy, or a neurosurgery consult in years.

I give Dr. Joseph's opinion little weight. He is a treating source but he is not a specialist, like Dr. Kendrick. Although Dr. Joseph said he does not believe anything can be done to help the claimant, as discussed therein, other providers have suggested some alternatives (e.g., injections but the claimant declined, etc.). Although Dr. Joseph has essentially been the claimant's only form of treatment since the alleged onset date, his treatment records reflect what appear to be either cut-and-paste physical exam findings, or incomplete findings, or missing records, and the few times the claimant has been seen [by] other providers since 2011 (i.e., the ER records), those physical exam findings are essentially normal compared to the findings noted by Dr. Joseph.

(Admin. Tr. 464-67).

Accordingly, I find that the ALJ's decision to discount Dr. Joseph's opinion is supported by substantial evidence. The ALJ identified Dr. Joseph as a treating source and provided her reasoning for discounting Dr. Joseph's opinion. As noted above, the ALJ highlighted several reasons for assigning his opinion little weight: (1) Dr. Joseph is not a specialist; (2) Dr. Joseph's treatment records were not

compelling support for his own opinion; and (3) Dr. Joseph's opinion was not

consistent with the record as a whole. (Admin. Tr. 466-67). The ALJ was particularly

unpersuaded by Dr. Joseph's treatment records, identifying them as "cut-and-paste-

type physical findings" or "incomplete." (Admin Tr. 467). The ALJ sufficiently

explained her decision to assign Dr. Joseph's opinion little weight when making her

RFC assessment. I find that the ALJ's decision to assign "little weight" to Dr.

Joseph's opinion is supported by substantial evidence. Reversal is not warranted on

the ALJ's treatment of Dr. Joseph's opinion.[5]

The Transcript in this case contains medical records from primary care

physician Dr. Joseph, covering the period from November 2013 to November 2014

(Admin. Tr. 427-447). Plaintiff argues that it was error for the ALJ to note that there

is a gap in the treatment notes and to not discuss these records. However, they were

not submitted to the Social Security Administration until the case was before the

---

[5] Plaintiff also raises an issue regarding the ALJ's conclusion that Plaintiff's
treatment was "conservative and routine." Plaintiff argues that no expert testimony
was provided regarding the nature of Plaintiff's treatment. It is not clear what error
Plaintiff is alleging based on the ALJ's conclusion about the type of treatment
Plaintiff received. A finding that a claimant received only conservative treatment is
an appropriate consideration in assessing credibility regarding disabling
impairments. *Skapely v. Colvin*, 2015 WL 7351583, at *12 (M.D. Pa. Nov. 30, 2015)
(citing *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 164 (3d Cir. 2008)). The
ALJ concluded that Plaintiff's treatment did not support a finding of the existence
of disabling pain. As noted above, substantial evidence supports the ALJ's analysis.
This conclusion was also supported by substantial evidence. Reversal is not
warranted on this conclusion.

Appeals Council (see Admin. Tr. 418-19 for an explanation by the Appeals Council of when and how these records were submitted, and why the ALJ did not err by not addressing them. The Appeals Council decision correctly notes that the ALJ considered the testimony of both Dr. Joseph and Plaintiff that his treatment with Dr. Joseph was continuous through this period without a gap.

While my review of this case is limited to the evidence properly submitted below, I have reviewed the "missing" records in detail (Admin. Tr. 430-52)[6] and cannot find a basis for remand, even if they were properly in the record and ignored by the ALJ. These records are repetitive, cut and paste typed entries that contain no specific findings. They are consistent with Dr. Joseph's hearing testimony that he did not order any additional tests or treatment because Plaintiff showed no change

---

[6] An index to the attorney submitted evidence I reviewed follows:

| Date | TR # | Source |
|------|------|--------|
| 10/21/13 | 440 | Dr. Joseph Office Visit |
| 11/18/13 | 447 | Dr. Joseph Office Visit |
| 12/17/13 | 439 | Dr. Joseph Office Visit |
| 01/15/14 | 438 | Dr. Joseph Office Visit |
| 02/12/14 | 437 | Dr. Joseph Office Visit |
| 03/12/14 | 436 | Dr. Joseph Office Visit |
| 04/14/14 | 435 | Dr. Joseph Office Visit |
| 05/13/14 | 434 | Dr. Joseph Office Visit |
| 06/11/14 | 433 | Dr. Joseph Office Visit |
| 07/10/14 | 432 | Dr. Joseph Office Visit |
| 08/07/14 | 431 | Dr. Joseph Office Visit |
| 09/08/14 | 430 | Dr. Joseph Office Visit |
| 10/07/14 | 429 | Dr. Joseph Office Visit |
| 11/05/14 | 427 | Dr. Joseph Office Visit |

in symptoms. There are no objective findings in these records, only a recitation of the symptoms reported by Plaintiff. Plaintiff does not explain how these records would or should have changed the ALJ's decision, and I can find no basis to believe they would. The ALJ's omission of these records from her analysis was not error, and even if it were error, it was harmless.

As noted above, Plaintiff also argues that the ALJ erred at its handling of Dr. Joseph's opinion at step three of her analysis. I am, again, not persuaded by Plaintiff's argument. Regarding the medical opinions of record and her step three analysis, the ALJ stated:

> Impartial medical expert Dr. Kendrick, an orthopedic surgeon (8F), testified that the claimant's impairments do not meet or equal any of the listings. I give Dr. Kendrick's opinion great weight. He is a specialist, his opinion was based upon the most complete and up-to-date set of records, and his testimony was subject to cross-examination by the claimant's attorney. I note that the claimant's primary physician, Dr. Joseph, who was also present at the hearing, offered no testimony advocating a finding of listing level severity. Clearly, the claimant's impairments do not rise to listing level severity.

(Admin. Tr. 461).

The ALJ explained why, at step three, she did not give Dr. Joseph's opinion any weight – Dr. Joseph gave no opinion as to any listed impairments. Plaintiff does not explain how Dr. Joseph's testimony is connected to the listing section analysis. Plaintiff's arguments appear to relate to the ALJ's RFC assessment. Thus, I do not find that reversal is warranted based on the ALJ's treatment of Dr. Joseph's opinion

at step three. Reversal is not warranted based on the ALJ's treatment of Dr. Joseph's opinion.

### 3. Whether the ALJ Was Biased

Plaintiff argues that the ALJ was biased "towards an unfavorable finding in light of the district court's remand." (Doc. 8, p. 9). Plaintiff argues:

> It must also be noted that the ALJ was directed by the District Court to review all pertinent medical evidence and fully explain her conciliations and rejections. Specifically, the ALJ was directed to conduct a new administrative hearing. (See Exhibit "C", Part V). Commencing on Page 8 of the ALJ's decision (see Exhibit C"), the ALJ seems to challenge the District Court's findings, rather than taking the objective, non-biased review of the medical documentation. (See Exhibit "C", p. 8 and 9). This is further evident on Page 37 and 38 of the transcript (p. 536 and 537 of the SSA File) where the ALJ took time to point out the district court's misunderstanding of the vocational portion of her previous order and decision, promising to address it in the next decision, which does not seem to have been done. While Springer is not trying to cast aspersions on the ALJ, there remains a significant concern that there was more of a focus in the entire 2017 proceedings on justification of the 2013 decision rather than the objective medical evidence presented and directed to be reviewed by the District Court.

*Id.*

Plaintiff also cites directly to the ALJ's reliance on medical records claiming Plaintiff was a "no show" for a consultative examination to demonstrate the ALJ's bias. *Id.*

Defendant asserts that Plaintiff's claim of ALJ bias has no merit. Defendant argues:

First, the ALJ's comments on the prior District Court decision do not show any bias (Tr. 463-64, 536-37, 606-35)). The ALJ apologized for an error, and also noted two instances where the District Court's decision did not appear to accurately reflect the record (Tr. 463, 436-37).

Beyond this, the ALJ noted that, although the District Court had found her prior credibility finding unexplained, she believed she had cited reasons for her prior credibility finding (Tr. 463). Nevertheless, the ALJ explained that she fully considered whether Plaintiff's statements were consistent with the evidence, obtained more opinion evidence, and then assess a more restrictive RFC than she had in the earlier decision (Tr. 463-64). And in any event, this discussion was only an introduction. The ALJ went to issue a complete de novo decision, addressing all relevant issues (Tr. 457-69). Nothing about these circumstances suggests any bias.

Second, the fact that the ALJ did not order a consultative examination does not show bias. Although Plaintiff claims that he did not fail to attend any consultative examination, record evidence supported the ALJ's finding, given the note that a prior consultative examination appointment was "not kept" (Tr. 200). Put simply, it was within the ALJ's discretion to call Dr. Kendrick to testify, rather than order a consultative examination. See 20 C.F.R. § 404.1517 (instructing that an examination "may" be ordered); Thompson v. Halter, 45 F.App'x 146, 149 (3d Cir. 2002) (holding that ordering a consultative examination is discretionary).

But even if the ALJ should not have made the finding about Plaintiff failing to appear at a prior consultative examination, this does not establish any bias or harmful error. The ALJ called an impartial medical expert to testify, ensuring that the record was sufficiently developed and complete, and obviating any need for a consultative examination. Indeed, tellingly, Plaintiff does not argue that the record was incomplete, conceding that there was no need for an additional consultative examination. For these reasons, the Court should reject Plaintiff's arguments, and find that the ALJ was not biased.

(Doc. 9, pp. 23-26) (footnotes omitted).

"Essential to a fair hearing is the right to an unbiased judge." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). This rule is applicable to administrative, as well as judicial, adjudicators. *Hummel v. Heckler*, 736 F.2d 91 (3d Cir. 1984). Recognizing this fundamental right, the Commissioner has provided a means for challenging the fairness of an administrative hearing on the grounds of ALJ bias. The Commissioner's regulations provide that:

> An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision. If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity. The administrative law judge shall consider your objections and shall decide whether to proceed with the hearing or withdraw. If he or she withdraws, the Associate Commissioner for Hearings and Appeals, or his or her delegate, will appoint another administrative law judge to conduct the hearing. If the administrative law judge does not withdraw, you may, after the hearing, present your objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another administrative law judge.

20 C.F.R. § 416.1440.

As observed by the Third Circuit Court of Appeals, this regulation "contemplates that factfinding with respect to claims of bias take place at the agency level, and that judicial review of bias claims take place in review proceedings under section 405(g)." *Hummel*, 736 F.2d at 94. Furthermore, a civil action in a District Court requesting review of a decision by the Social Security Administration is adjudicated as an appeal. L.R. 83.40.1. Because a District Court may not make its

own findings of fact in such cases, claims of ALJ bias that were apparent during the administrative review process, but not raised, are deemed waived. *See Hummel*, 736 F.2d at 94 ("had Hummel been aware of the facts giving rise to her claim of bias she would be deemed to have waived it by failing to raise it in the manner specified in 20 C.F.R. § 416.1440." *Grant et al. v. Shalala*, 989 F.2d 1332, 1329 (3d Cir. 1993) ("the district court may not conduct a trial and make its own findings regarding the ALJ's alleged bias . . . [it] must review the Secretary's findings on the question of bias rather than making independent findings of its own."; *Ward v. Shalala*, 898 F.Supp. 261, 269 (D. Del. 1995) ("Because Ms. Ward brought up the bias claim for the first time before this Court she is deemed to have waived her bias claim.").

Plaintiff first became aware of a potential bias claim during his second administrative hearing. (Doc. 8, p. 9) (alleging that the ALJ was biased towards an unfavorable finding in light of the District Court's remand). Plaintiff did not raise the issue of bias to the Appeals Court. Instead, Plaintiff raises the issue of bias for the first time in this Court. There are no administrative findings on the issue of the ALJ's bias for me to review. Accordingly, I find that Plaintiff's bias claim is waived.

Furthermore, I note that courts have found that a claimant was deprived a fair hearing due to ALJ bias only in extreme cases, such as where an ALJ constantly interrupted the claimant when he was testifying with questions that were irrelevant to the issue of disability. *See, e.g.*, *Ventura*, 55 F.3d at 902-904. However, the record

before me does not reveal conduct by the ALJ that suggests that Plaintiff's second administrative hearing was unfair.

   4.   *Whether the ALJ Erred by Failing to Address Dr. Joseph's Medical Objections to the Vocational Expert's Testimony*

I also note that Plaintiff appears to argue that the ALJ erred by not addressing Dr. Joseph's objections to the vocational expert's findings. Plaintiff argues:

> [I]t is notable that Dr. Joseph testified directly about the vocational expert's findings in relation to the jobs that Springer could allegedly perform. (NT p. 43-44). For example, he confirmed that Springer would need more than 30 minutes at each break, which would render him incapable of performing any job as outlined. In addition to the fact that Dr. Kendrick did not render any opinion in this regard, the ALJ, once again, did not even acknowledge in her decision that Dr. Joseph refuted the vocational expert's findings. The District Court confirmed that the ALJ had to identify the evidence she was rejecting and her reasons for discounting the said evidence. For the vocational expert, the ALJ made no statement or reference to the medical objections to the vocational expert's findings. As a result, the ALJ's decision should be reversed as contrary to the evidence provided.

(Doc. 8, p. 11).

Defendant responds by arguing:

> Dr. Joseph's testimony related to Plaintiff specifically, not the vocational impact of any limitations on a hypothetical individual. The ALJ thus correctly considered Dr. Joseph's testimony not as vocational testimony, but rather as relevant to the RFC finding (Tr. 466-67). In the RFC finding, the ALJ noted Dr. Joseph's testimony that Plaintiff "need[ed] to lie down during the day" (Tr. 466), but having determined that Dr. Joseph's opinion deserved little weight, the ALJ did not find that Plaintiff needed extra breaks to lie down (Tr. 461-67).

(Doc. 9, p. 23).

The vocational expert testified that a hypothetical individual with Plaintiff's age, education, work experience, and RFC could perform work in the national economy (Tr. 537-40). Following the vocational expert's testimony, Dr. Joseph testified regarding Plaintiff's possible limitations (i.e., needing to lay down for two to three hours after walking or sitting). (Admin. Tr. 542-43). Dr. Joseph's testimony did not actually relate to the vocational expert's testimony. Dr. Joseph testified specifically about Plaintiff and did not address the vocational expert's hypothetical individual. Thus, reversal is not required on this issue.

V.    CONCLUSION

For the reasons stated herein, Plaintiff's request for the award of benefits will be DENIED as follows:

(1)    The final decision of the Commissioner will be AFFIRMED.

(2)    Final judgment will be issued in favor of Andrew Saul, Commissioner of Social Security.

(3)    An appropriate order shall follow.

Date: July 13, 2020                              BY THE COURT

_s/William I. Arbuckle_
William I. Arbuckle
U.S. Magistrate Judge